IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| DONNA COTTEN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:22-CV-04084-DGK-SSA ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

This case arises from the Commissioner of Social Security's ("the Commissioner") denial of Plaintiff Donna Cotton's application for Social Security disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–434. The Administrative Law Judge ("ALJ") found Plaintiff had severe impairments of mild neurocognitive impairment, adjustment disorder, major depressive disorder, and generalized anxiety disorder, but she retained the residual functional capacity ("RFC") to perform sedentary work with a variety of restrictions. The ALJ held Plaintiff could not perform any past relevant work, but could work as a change house attendant, counter-supply worker, and linen room attendant.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record. The Commissioner's decision is AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed an application for disability insurance benefits on October 23, 2019, alleging a disability onset date of August 1, 2017. The Commissioner denied the application at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing during which Plaintiff amended the alleged onset date to October 17, 2018. On March 29, 2021, the ALJ issued a written decision finding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on April 18, 2022, leaving the ALJ's decision as the Commissioner's final decision. Judicial review is now appropriate under 42 U.S.C. § 405(g).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole and whether the ALJ committed any legal errors. *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016). Substantial evidence is less than a preponderance but is enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015); *see Biestek v. Berryhill*, 139 S.Ct. 1148, 1157 (2019) (noting the substantial evidence standard of review "defers to the presiding ALJ, who has seen the hearing up close"). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

**Discussion**

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

Plaintiff contends the ALJ erred at Step Three by failing to find that her impairments met the requirements of Listing 12.02 for Neurocognitive Disorders and at Step Five by finding that she could perform other work. Both arguments are unavailing.

## I. The ALJ did not err in finding Plaintiff did not meet Listing 12.02.

Plaintiff asserts the ALJ erred in his analysis of Listing 12.02 by concluding that she has only moderate limitations in the following: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. Plaintiff argues the ALJ's discussion of his findings is inadequate because it does not discuss exactly what evidence justified his conclusion with respect to each area.

As a threshold matter, it is the claimant's burden to prove that her impairment meets all the criteria set forth in a listing to be found disabled at Step Three. *Dols v. Saul*, 931 F.3d 741, 746 (8th Cir. 2019). Here, while Plaintiff has pointed to some evidence in the record—namely, her own testimony—that she suffered marked limitations, the Court agrees this evidence is unpersuasive for the reasons given by the ALJ. For example, Plaintiff made multiple statements

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

suggesting her activities of daily living are not as restricted as she alleges, and the objective medical evidence is not consistent with such allegations either. Thus, Plaintiff has not carried her burden.

Further, Plaintiff is incorrect—the ALJ adequately discussed the evidence supporting his findings, albeit sometimes in a different section of his opinion than that discussing Listing 12.02. For example, Plaintiff argues the ALJ disregarded a neuropsychological evaluation in the record. In fact, the ALJ not only discussed the evaluation, but he also repeatedly quoted from it. R. at 20 (discussing the evaluation in the context of determining Plaintiff's RFC at Step Four). Hence the ALJ did not err by failing to discuss the evidence justifying his conclusion. *See, e.g.*, *Wiese v. Astrue*, 552 F.3d 728, 733–34 (8th Cir. 2009) (holding it is permissible if the basis of the ALJ's finding may be "apparent from the opinion's entirety"). Granted the ALJ did not discuss all the evidence in the record. But "an ALJ is not required to discuss every piece of evidence submitted," and "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quotation omitted).

Plaintiff's argument that it is impossible to discern from the decision what evidence supports the ALJ's finding that she had only moderate limitations is also unpersuasive. Although the ALJ did not separate this evidence out since it applied to multiple domains, his finding of moderate limitations in all four functional areas is supported by substantial evidence in the record. For instance, the ALJ noted that Plaintiff reported missing appointments, but also had normal memory on multiple mental status examinations, supporting his finding of moderate limitations in understanding, remembering, or applying information. R. at 16, 548, 729, 747–48, 822, 873, 892. With respect to his finding that Plaintiff had only moderate limitations interacting with others, the ALJ noted Plaintiff's marital problems, yet also noted she was considering divorcing her husband

4

Case 2:22-cv-04084-DGK   Document 12   Filed 07/28/23   Page 4 of 6

and hoped to spend more time with her family. R. at 16, 827. The ALJ's findings concerning the other two domains are similarly well-supported by the record.

Because substantial evidence supports the ALJ's determination that Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, Listing 12.02's criteria are not satisfied, and the decision should be affirmed. *See* 20 C.F.R. Pt. 404, Subpt. P § 12.00(A)(2)(b).

**II.     The ALJ did not err in finding Plaintiff could perform other work.**

Plaintiff's argument that the ALJ erred at Step Five in relying on the vocational expert's ("VE") finding she could work as a change house attendant, counter-supply worker, and linen room attendant has even less merit. Plaintiff contends there were apparent conflicts between the ALJ's RFC findings and the requirements of these jobs as set forth in the Dictionary of Occupational Titles ("DOT"), and the ALJ failed to identify and resolve them, which is error.

This argument fails because there are no conflicts, apparent or otherwise, between the RFC and the DOT's job descriptions for these positions. To begin, the Court notes the ALJ asked the VE if her answers were consistent with the DOT, and she replied "Yes." R. at 51. Although this colloquy is not dispositive, *see Moore v. Colvin*, 769 F.3d 987, 990 (8th Cir. 2014), nothing in the record indicates there were any conflicts or inconsistencies to suggest the ALJ should have asked additional questions. Indeed, Plaintiff's claim that there was some sort of conflict here rests solely on her bald assertions.

Take, for example, the position of counter-supply worker. The RFC restricts Plaintiff to jobs that "do not involve communication or direct interaction with the general public." R. at 18. Plaintiff contends—without citation to any authority whatsoever—that this job "clearly involves direct interaction with the general public" and is "certainly inconsistent with a prohibition of direct

5

interaction with the public." R. at 23. But it does not. The DOT describes the duties of this position as,

> [r]eplenishes food and equipment at steamtables and serving counters of cafeteria to facilitate service to patrons: Carries food, dishes, trays, and silverware from kitchen and supply departments to serving counters. Garnishes foods and positions them on table to ensure their visibility to patrons and convenience in serving. Keeps assigned area and equipment free of spilled foods. Keeps shelves of vending machines stocked with food when working in automat.

*Dictionary of Occupational Titles*, Dep't of Labor (4th ed. Rev. 1991), available at https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT03A (last visited July 20, 2023). Garnishing food and putting it on a table where it will be visible to a customer does not "involve communication or direct interaction with the general public," or anything akin to it. Consequently, there is no conflict here between the RFC and the requirements of the jobs identified by the ALJ.

## Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:  July 28, 2023  /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT